UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALAMDAR RAMZAN, | ) | |
|         PLAINTIFF, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| CORNERSTONE RESTORATION, INC., and | ) | |
| JASON CHI, | ) | |
|         DEFENDANTS. | ) | |

## COMPLAINT

NOW COMES, Plaintiff ALAMDAR RAMZAN, ("Plaintiff"), by through his attorneys, Kreitman Law, LLC and Gainsberg Law, P.C., with his Complaint against Defendants CORNERSTONE RESTORATION, INC., and JASON CHI (collectively, "Defendants"), and states as follows:

### NATURE OF CASE

1. This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 I.L.C.S. § 105, *et seq.,* ("IMWL") and the Illinois Wage Payment and Collection Act, 820 I.L.C.S. § 115, *et seq.*, ("IWPCA") for the failure to pay minimum and overtime wages to Plaintiff, and termination in retaliation for protected activity in violation of the FLSA, the IMWL and IWPCA.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331, arising under 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue is properly placed in this District because the Defendants are transacting business in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District pursuant to 28 U.S.C. §1391(b)(2) and (3).

## PARTIES

4. At all times material to this Complaint Plaintiff was a citizen of the United States and the State of Illinois.

5. At all times material to this Complaint, Defendant CORNERSTONE RESTORATION, INC. ("Defendant CORNERSTONE") maintained a principal place of business located at 1230 Remington Rd, Schaumburg, IL 60173 and operated a roofing contracting business.

6. At all times material to this Complaint, Defendant JASON CHI ("Defendant CHI") was President and an owner of Defendant CORNERSTONE and exercised significant control over the day-to-day operations and payroll policies of the Defendant CORNERSTONE, including the compensation of Plaintiff during his employment with the Defendants.

7. At all times material to this Complaint, the Defendants employed more than four employees exclusive of the employer's parent, spouse or child or other members of immediate family of its owners.

## FACTS

8. On or around September 2019 Plaintiff was hired by Defendant CORNERSTONE, to work in the phone appointment office, generating leads for roofing work for the outside sales team at a rate of $10.00 per hour, plus occasional commissions on leads.

9. Employees in the phone appointment office were compensated with a commission for each lead generated where the client actually attended an appointment with a sales

representative for Defendant CORNERSTONE and an additional commission for each lead generated that actually led to an inspection of a roof with roof damage.

10. In January 2020 Plaintiff was granted leave to go to Pakistan and returned early March 2020.

11. Prior to leaving to Pakistan, Defendant CORNERSTONE agreed to transfer Plaintiff to the outside sales department.

12. Bill Jew was the manager of the outside sales department at this time, and instructed Plaintiff to begin training for the new position while in Pakistan.

13. In February 2020, Mr. Jew sent Plaintiff a 60-70 page manual, and told him to train and study and familiarize himself with roofing estimate and appraisal techniques to begin working in his new position in outside sales.

14. In February 2020, Plaintiff spent approximately 20 hours training himself per Mr. Jew's instruction.

15. In February or early March 2020, Mr. Jew then instructed Plaintiff via company email to review 15-20 training videos for the outside sales position and review the videos in conjunction with the written material previously sent.

16. Plaintiff spent approximately 25 hours reviewing the videos in conjunction with his review of the written material previously sent.

17. Plaintiff was never paid for this training time.

18. Upon returning from Pakistan in March 2020, Plaintiff worked in both the phone appointment setting office, working in the outside sales department, actually going on-site and attending appointments with clients.

19. As an outside sales department employee, Plaintiff's rate of pay was to be $800.00 per week gross and commission on sales made.

20. In March 2020, during this first week of working in both positions, Plaintiff worked approximately 45 hours.

21. Plaintiff was not paid overtime during this week in March 2020.

22. After this first week, Plaintiff transitioned to full-time with the outside sales department and was told by Mr. Jew that the company could no longer pay him compensation and he would be compensated exclusively through commission.

23. During March 2020 and April 2020, Plaintiff asked Mr. Jew 2-3 times to be compensated for his training time and each time it was denied.

24. In March-April 2020, after working in the outside sales department, Plaintiff noticed that Defendant CORNERSTONE would falsify records related to roof damage on appointments to reflect there was no roof damage. This facilitated Defendant CORNERSTONE to avoid paying commissions to the phone appointment department employees.

25. Plaintiff shared some specific examples of appointments where he observed roof damage and the Defendant CORNERSTONE records reflected no roof damage with his former co-workers in the phone appointment department.

26. In May 2020, the supervisor of the phone appointment department Jarrid Arranz found out Plaintiff had been revealing jobs with roof damage that were falsely indicated as no roof damage. Mr. Arranz explained to Plaintiff that he was in a unique position having knowledge of both departments, and that he was "breaking the barrier" and that Defendant CORNERSTONE could not afford to pay the phone appointment commissions and to stop sharing the roof damage information with the employees in the phone appointment office.

27. Later in May 2020, Plaintiff again asked Mr. Arranz to be paid for training and said it was wrong to lie about the roof damage to the phone appointment employees to avoid paying their commissions. Plaintiff stated Defendant CORNERSTONE was breaking labor laws. At that point Mr. Arranz had an outburst of anger and said he was "sick" of the conversation and said that everyone was sacrificing as the company could go under at any time, and that he had not complained about a missing paycheck for three weeks.

28. During this time, Plaintiff wanted to transition back to the phone appointment department due to inadequate COVID-19 precautions and due to the removal of the previously promised base pay.

29. Shortly before he was fired on May 27, 2020, Plaintiff spoke with Defendant CHI and Cynthia Perez, and again asked for payment for the training hours which was denied.

30. On May 27, 2020, Defendant CHI and Ms. Perez terminated Plaintiff due to his requests to be paid for training and protests about cheating phone room employees from earned commissions, and then lied that Plaintiff had resigned his position to avoid paying Plaintiff unemployment.

31. As a result of his termination, Plaintiff suffered pecuniary and non-pecuniary damages, including lost wages and emotional distress, and has incurred attorney's fees and costs in this matter.

## COUNT I
### Willful Failure to Pay Overtime in Violation of the Fair Labor Standards Act
### Plaintiff v. All Defendants

1-31. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-31 of this Complaint as if fully set forth herein this Paragraph 1-31 of Count I.

5

32. At all times material to this Complaint, the Defendants were an "employer" of Plaintiff as defined by the FLSA, 29 U.S.C § 203(d).

33. At all times material to this Complaint, Plaintiff was an "employee" of the Defendants as defined by the FLSA, 29 U.S.C § 203(d).

34. During the week Plaintiff was assigned to the phone appointment room and outside sales in March 2020, he did not fall under any exemption or exception to the FLSA's overtime pay requirements.

35. Under the FLSA, 29 U.S.C. 211(c), Defendants were required to maintain accurate records of hours worked by Plaintiff.

36. Defendants failed to maintain accurate records of the hours worked by Plaintiff.

37. Under the FLSA, 29 U.S.C. 207(a)(1), Defendants were required to compensate Plaintiff for all hours worked in excess of 40 hours per week and to pay a rate of time and a half their regular rate of pay for all overtime, i.e., hours worked in excess of 40 hours per work week.

38. Defendants' conduct was willful and intentional, in that Defendants' required, approved and/or suffered or permitted Plaintiff to work five hours of uncompensated overtime in March 2020, for which he was not compensated at the statutory rates, or knew or should have known Plaintiff worked overtime hours in 2019 for which he was not compensated at the statutory overtime premium rates.

39. Plaintiff should have been paid at least $15.00 per hour (1.5 times the hourly rate of $10.00 per hour) for all hours worked during this week of March 2020.

40. Plaintiff was not paid at all for these five hours during this week of March 2020.

41. As a result of Defendants' willful failure to pay overtime, Plaintiff suffered a loss of $75.00.

WHEREFORE, Plaintiff respectfully request this Court enter judgment in their favor and against Defendants jointly and severally, for the following:

a) Finding Defendants' conduct alleged herein to be willful and an award of back pay equal to the amount of all unpaid compensation at a rate of one and a half times Plaintiff' regular hourly rate for all hours works in excess of 40 hours per week for the three years prior to the filing of this Complaint;

b) An award of liquidated damages equal to the amount of all unpaid overtime compensation requested herein, or alternatively, prejudgment interest;

c) Attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b);

d) For an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

e) Such other relief as this Court deems necessary and just.

## COUNT II
**Willful Failure to Pay Minimum Wages in Violation of the Fair Labor Standards Act
Plaintiff v. All Defendants**

1-31. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-31 of this Complaint as if fully set forth herein this Paragraph 1-31 of Count II.

42. At all times material to this Complaint, the Defendants were an "employer" of Plaintiff as defined by the FLSA, 29 U.S.C § 203(d).

43. At all times material to this Complaint, Plaintiff was an "employee" of the Defendants as defined by the FLSA, 29 U.S.C § 203(d).

44. Plaintiff performed approximately 20 hours of work for the exclusive benefit of Defendants in the month of February 2020, studying training material for his new position in

7

outside sales at the direction and with the knowledge of Mr. Jew, who acted within the scope of his agency as a manager with Defendant CORNERSTONE.

45. Plaintiff performed approximately 25 hours of work for the exclusive benefit of Defendants in approximately the first week month of March 2020, studying videos and the training material for his new position in outside sales at the direction and with the knowledge of Mr. Jew, who acted within the scope of his agency as a manager with Defendant CORNERSTONE.

46. Under the FLSA, 29 U.S.C. 211(c), Defendants were required to maintain accurate records of hours worked by Plaintiff.

47. Defendants failed to maintain accurate records of the hours worked by Plaintiff.

48. Under the FLSA, 29 U.S.C. 206(a)(1)(C), Defendants were required to compensate Plaintiff for all hours worked at a rate of at least $7.25.

49. Defendants' conduct was willful and intentional, in that Defendants' required, approved and/or suffered or permitted Plaintiff to work uncompensated a total of 45 hours between February 2020 and March 2020.

50. Plaintiff should have been paid at least $7.25 per hour these 45 hours of work.

51. Plaintiff was not paid at all for these 45 hours during February - March 2020.

52. As a result of Defendants' willful failure to pay minimum wages, Plaintiff suffered a loss of $326.25.

WHEREFORE, Plaintiff respectfully request this Court enter judgment in their favor and against Defendants jointly and severally, for the following:

(a) Finding Defendants' conduct alleged herein to be willful and an award of back pay equal to the amount of all unpaid compensation at a rate of $7.25 per hour for the three years prior to the filing of this Complaint;

(b) An award of liquidated damages equal to the amount of all unpaid minimum compensation requested herein, or alternatively, prejudgment interest;

(c) Attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b);

(d) For an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

(e) Such other relief as this Court deems necessary and just.

### COUNT III
### Failure to Pay Overtime in Violation of the Illinois Minimum Wage Law
### Plaintiff v. All Defendants

31. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 31 of this Complaint above as if fully set forth herein this Paragraph of Count III.

32. At all times material to this Complaint, Defendants were an "employer" of Plaintiff as defined by the IMWL, 820 I.L.C.S. § 105/3(c).

33. During the week Plaintiff was assigned to the phone appointment room and outside sales in March 2020, he did not fall under any exemption or exception to the IMWL's overtime pay requirements.

34. Defendants failed to maintain accurate records of the hours worked by Plaintiff.

35. Under the IMWL, 820 I.L.C.S. § 105/4(a), Defendants were required to compensate Plaintiff for all hours worked in excess of 40 hours per week and to pay a rate of time and a half their regular rate of pay for all overtime, i.e., hours worked in excess of 40 hours per work week.

36. Defendants' conduct was willful and intentional, in that Defendants' required, approved and/or suffered or permitted Plaintiff to work five hours of uncompensated overtime in March 2020, for which he was not compensated at the statutory rates, or knew or should have

known Plaintiff worked overtime hours in 2019 for which he was not compensated at the statutory overtime premium rates.

37. Plaintiff should have been paid at least $15.00 per hour (1.5 times the hourly rate of $10.00 per hour) for all hours worked during this week of March 2020.

38. Plaintiff was not paid at all for these five hours during this week of March 2020.

39. As a result of Defendants' willful failure to pay overtime, Plaintiff suffered a loss of $75.00.

WHEREFORE, Plaintiff respectfully request this Court enter judgment in his favor and against Defendants, jointly and severally, for the following:

a) Finding Defendants' conduct alleged herein to be willful and an award of back pay equal to the amount of all unpaid compensation at a rate of one and a half times Plaintiff's regular hourly rate for all hours works in excess of 40 hours per week for the three years prior to the filing of this Complaint;

b) An award of double the amount of underpayments accrued by Plaintiff pursuant to 820 I.L.C.S. § 105/12;

c) An award of 5% of the amount of underpayments accrued by Plaintiff after February 17, 2019 for each month following the date of payment during which such underpayment remains unpaid pursuant to 820 I.L.C.S. § 105/12;

d) Attorneys' fees and costs of this action pursuant to 820 I.L.C.S. § 105/12(a); and

e) Such other relief as this Court deems necessary and just.

## COUNT IV
### Willful Failure to Pay Overtime in Violation of the Illinois Minimum Wage Law
### Plaintiff v. All Defendants

1-31. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-31 of this Complaint as if fully set forth herein this Paragraph of Count IV.

32. At all times material to this Complaint, the Defendants were an "employer" of Plaintiff as defined by the IMWL, 820 I.L.C.S. § 105/3(c).

33. Plaintiff performed approximately 20 hours of work for the exclusive benefit of Defendants in the month of February 2020, studying training material for his new position in outside sales at the direction and with the knowledge of Mr. Jew, who acted within the scope of his agency as a manager with Defendant CORNERSTONE.

34. Plaintiff performed approximately 25 hours of work for the exclusive benefit of Defendants in approximately the first week month of March 2020, studying videos and the training material for his new position in outside sales at the direction and with the knowledge of Mr. Jew, who acted within the scope of his agency as a manager with Defendant CORNERSTONE.

35. Under the IMWL Defendants were required to maintain accurate records of hours worked by Plaintiff.

36. Defendants failed to maintain accurate records of the hours worked by Plaintiff.

37. Under the IMWL, 820 I.L.S.C. 105/4(a)(1), Defendants were required to compensate Plaintiff for all hours worked at a rate of at least $9.25.

38. Defendants' conduct was willful and intentional, in that Defendants' required, approved and/or suffered or permitted Plaintiff to work uncompensated a total of 45 hours between February 2020 and March 2020.

39. Plaintiff should have been paid at least $9.25 per hour these 45 hours of work.

40. Plaintiff was not paid at all for these 45 hours during February - March 2020.

41. As a result of Defendants' willful failure to pay minimum wages, Plaintiff suffered a loss of $416.25.

WHEREFORE, Plaintiff respectfully request this Court enter judgment in their favor and against Defendants jointly and severally, for the following:

a) Finding Defendants' conduct alleged herein to be willful and an award of back pay equal to the amount of all unpaid compensation at a rate of one and a half times Plaintiff' regular hourly rate for all hours works in excess of 40 hours per week for the three years prior to the filing of this Complaint;

b) An award of liquidated damages equal to twice the amount of all unpaid overtime compensation requested herein, or alternatively, prejudgment interest;

c) Attorneys' fees and costs of this action;

d) For an Order awarding Plaintiff pre-judgment at the statutory rate of 5% and post-judgment interest at the highest rates allowed by law; and

e) Such other relief as this Court deems necessary and just.

## COUNT V
### RETALIATORY DISCHARGE in Violation of the Fair Labor Standards Act
### Plaintiff v. All Defendants

1-41. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-41 of Count I of this Complaint as if fully set forth herein this Paragraph of Count V.

42. Plaintiff's from March – May 2020 complaints to be paid for training time in February – March 2020 as described herein, constituted protected internal complaint activity under the FLSA.

43. At all times material to this Complaint, the FLSA, 29 USC 215(a)(3) prohibited retaliation or discrimination by an employer against an employee because of protected internal complaint activity.

44. On or about May 27, 2020, Defendants knowingly and willingly violated the FLSA by terminating Plaintiff in retaliation for his FLSA protected internal complaint activity.

45. As a result of Plaintiff's termination, Plaintiff sustained lost wages, emotional distress and has incurred attorney's fees and costs in this matter.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants jointly and severally for the following:

a) Finding Defendants' conduct alleged herein to be willful and an award of actual damages;

b) An award of liquidated damages equal to the amount of all actual damages requested herein, or alternatively, prejudgment interest;

c) Compensatory Damages;

d) Punitive Damages;

e) Attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b);

f) For an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

g) Such other relief as this Court deems necessary and just.

## COUNT VI
### Retaliatory Discharge in Violation of the Illinois Minimum Wage Law
### Plaintiff v. All Defendants

1-39. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 39 of Count III of this Complaint above as if fully set forth herein this Paragraph of Count VI.

32. Plaintiff's complaints described herein this Complaint in March – May 2020 related to payment for training in February – March 2020 constituted protected internal complaint activity under the IMWL.

33. At all times material to this Complaint, the IMWL, 820 ILCS 105/11 prohibited retaliation or discrimination by an employer against an employee because of protected internal complaint activity.

34. On or about May 27, 2020, Defendants knowingly and willingly violated the IMWL by terminating Plaintiff in retaliation for his IMWL protected internal complaint activity.

35. As a result of Plaintiff's termination, Plaintiff sustained lost wages, consequential damages, emotional distress and has incurred attorney's fees and costs in this matter.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants jointly and severally for the following:

a) Finding Defendants' conduct alleged herein to be willful and an award of actual damages;

b) Compensatory Damages;

c) Punitive Damages;

d) Attorneys' fees and costs of this action;

e) For an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

f) Such other relief as this Court deems necessary and just.

## COUNT VII
### Retaliatory Discharge in Violation of the Illinois Wage Payment and Collection Act
### Plaintiff v. All Defendants

1-31. Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 31 of this Complaint above as if fully set forth herein this Paragraph of Count VII.

32. At all times relevant herein, Plaintiff was an "employee" of Defendant CORNERSTONE, as defined by the IWPCA. 820 ILCS § 115/2.

33. At all times relevant herein, Defendant CHI was an "employer" of Mr. Perlman, as defined by the IWPCA. 820 ILCS § 115/13; 820 ILCS § 115/2.

34. Plaintiff's complaints described herein this Complaint in April-May 2020 to Mr. Arraz related to non-payment of earned commissions, constituting wages within the meaning of the IMWL, to phone appointment employees through falsification of roofing damage records constituted protected internal complaint activity under the IWPCA.

35. At all times material to this Complaint, the IWPCA, 820 ILCS 115/13 prohibited retaliation or discrimination by an employer against an employee because of protected internal complaint activity.

36. On or about May 27, 2020, Defendants knowingly and willingly violated the IWPCA by terminating Plaintiff in retaliation for his IWPCA protected internal complaint activity.

37. As a result of Plaintiff's termination, Plaintiff sustained lost wages, consequential damages, emotional distress and has incurred attorney's fees and costs in this matter.

15

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in his favor and against Defendants jointly and severally for the following:

a) Finding Defendants' conduct alleged herein to be willful and an award of actual damages;

b) Compensatory Damages;

c) Punitive Damages;

d) Attorneys' fees and costs of this action;

e) For an Order awarding Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

f) Such other relief as this Court deems necessary and just.

JURY TRIAL DEMANDED.

                                                Respectfully submitted,

                                                KREITMAN LAW, LLC

                                      By: __/s/ Nicholas Kreitman
                                                  Nicholas Kreitman
                                                  Plaintiff' Attorney

Nicholas Kreitman
Kreitman Law, LLC
#6313283
22 W. Washington St., 15th Floor
Chicago, Illinois 60602
(847) 970-0575
njk@kreitmanlaw.com